**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**Case No.:**

GOVERNMENT EMPLOYEES INSURANCE CO., GEICO
INDEMNITY CO., GEICO GENERAL INSURANCE
COMPANY and GEICO CASUALTY CO.,

      Plaintiffs,                                      **Jury Trial Demand**

vs.

CHARLES A. SIMPSON, D.C., SIMPSON CHIROPRACTIC
PAIN AND WELLNESS CENTER, P.A., URGENT CARE
CHIROPRACTIC PAIN CENTER, PLLC, NIDA RIZVI,
A.P.R.N., and THE WELLNESS WORKS MEDICAL GROUP,
LLC,

      Defendants.

_____/

## **COMPLAINT**

      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General

Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), sue

Defendants and allege as follows:

      1.      This action seeks to recover more than $1,100,000.00 that Defendants wrongfully

obtained from GEICO by submitting thousands of fraudulent and unlawful no-fault ("no-fault",

"personal injury protection", or "PIP") insurance charges through Defendants Simpson

Chiropractic Pain and Wellness Center P.A., ("Simpson Chiropractic"), Urgent Care Chiropractic

Pain Center, PLLC ("Urgent Care Chiropractic"), and The Wellness Works Medical Group, LLC

("Wellness Works") relating to medically unnecessary, illusory, unlawful, and otherwise non-

reimbursable health care services and goods, including purported examinations, "physical therapy"

services, chiropractic services, and related services (collectively, the "Fraudulent Services"), that

purportedly were provided to Florida automobile accident victims ("Insureds") who were eligible for coverage under GEICO no-fault insurance policies.

    2.    In addition, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $75,000.00 in pending, fraudulent and unlawful PIP claims that Defendants have submitted through Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works because:

    (i)    at all relevant times: (a) Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works operated in violation of the Florida Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"); (b) Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works operated in violation of Florida's patient brokering act, Fla. Stat § 817.505 (the "Patient Brokering Act"); (c) Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works operated in violation of Florida's Patient Self-Referral Act, Fla. Stat. § 456.053 (the "Self-Referral Act"); (d) Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works operated in violation of Florida's anti-kickback statute, Fla. Stat. § 456.054 (the "Anti-Kickback Statute"); (e) Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works operated in violation of Florida's False and Fraudulent Insurance Claims Statute, Fla. Stat. § 817.234(7) (the "False and Fraudulent Insurance Claims Statute"); and (f) Simpson Chiropractic and Urgent Care Chiropractic operated in violation of Fla. Stat. § 460.413, F.A.C. Rule 64B2-15.001 (the "Chiropractor Advertising Laws"), rendering them ineligible to collect no-fault insurance benefits in the first instance, and rendering its no-fault insurance charges noncompensable and unenforceable

    (ii)    the underlying Fraudulent Services were not medically necessary or lawfully billed to GEICO, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them;

    (iii)    in many cases, the Fraudulent Services never were provided in the first instance; and

    (iv)    the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to fraudulently inflate the charges submitted to GEICO.

    3.    Each charge submitted through Simpson Chiropractic, Urgent Care, and Wellness Works since at least 2020 has been fraudulent and unlawful for the reasons set forth herein. The charts annexed hereto as Exhibits 1" - "3" set forth large and representative samples of the

fraudulent and unlawful claims that have been identified to date that have been submitted to GEICO by mail through Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works.

4.      The Defendants' interrelated fraudulent schemes began no later than 2020 and have continued uninterrupted since that time.

### THE PARTIES

I.      **Plaintiffs**

5.      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively, "GEICO") are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in Florida.

II.     **Defendants**

6.      Defendant Charles A. Simpson, D.C. ('Simpson') resides in and is a citizen of Florida.

7.      Simpson was licensed to practice chiropractic in Florida on or about June 28, 2001, but has never been a licensed physician.

8.      At all relevant times, Simpson owned and controlled Simpson Chiropractic and Urgent Care Chiropractic, purported to perform or directly supervise the majority of the Fraudulent Services at Simpson Chiropractic and Urgent Care Chiropractic, falsely purported to supervise the business activities at Simpson Chiropractic and Urgent Care Chiropractic, and used Simpson Chiropractic and Urgent Care Chiropractic as vehicles to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

9.      Defendant Simpson Chiropractic is a Florida corporation with its principal place of business in Stuart, Florida.

10.    Simpson Chiropractic was incorporated in Florida on August 16, 2001, purported to have Simpson as its sole owner, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

11.    At all relevant times, Simpson Chiropractic falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

12.    Defendant Urgent Care Chiropractic is a Florida limited liability company with its principal place of business in Port St. Lucie, Florida.

13.    Urgent Care Chiropractic was organized in Florida on April 15, 2015, purported to have Simpson as its sole owner and member, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

14.    At all relevant times, Urgent Care Chiropractic falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

15.    Defendant Nida Rizvi, A.P.R.N. ("Rizvi") resides in and is a citizen of Florida.

16.    Rizvi was licensed as an advanced practice registered nurse in Florida on November 5, 2020, but has never been a licensed physician or a chiropractor.

17.    Rizvi falsely purported to be the sole owner of Wellness Works, purported to provide the vast majority of the Fraudulent Services at Wellness Works, and, together with Simpson, used Wellness Works as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

18.    Defendant Wellness Works is a Florida limited liability company with its principal place of business in Stuart, Florida.

19.    Wellness Works was organized in Florida on March 23, 2020.

20.     Wellness Works was nominally solely owned on paper by Rizvi, but actually was truly co-owned and controlled by Simpson, and was used by the Defendants as a vehicle to submit fraudulent billing to GEICO and other insurers.

21.     At all relevant times, Wellness Works falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.

23.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act).

24.     In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

25.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is the District where one or more of Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS

## I.     Brief Overview of Pertinent Law Governing No-Fault Insurance Reimbursement

26.     Florida requires automobile insurers such as GEICO to provide PIP insurance benefits ("PIP Benefits") to Insureds when they are injured in a motor vehicle accident. See Florida Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law").

27.     Under the No-Fault Law, a health care services provider that possesses a valid assignment of PIP Benefits from an Insured and that provides medically necessary health care

services to an Insured may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms, including the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form" or "CMS-1500" form).

28. PIP reimbursement for health care services is limited to $2,500.00 per injured person, unless a physician, physician assistant, or advanced practice registered nurse determines that the injured person suffered from an "emergency medical condition", in which case health care providers can be reimbursed up to $10,000.00 for health care services. See Fla. Stat. § 627.736.

29. Pursuant to the No-Fault Law, an "emergency medical condition" means a "medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) serious jeopardy to patient health. (b) serious impairment to bodily functions. (c) serious dysfunction of any bodily organ or part." Fla. Stat. § 627.732.

30. In order for a health care service to be eligible for PIP reimbursement, it must be "lawfully" provided, medically necessary, and the bill for the service cannot misrepresent the nature or extent of the service that was provided, or who performed or directly supervised the service. Furthermore, insurers such as GEICO are not required to pay anyone who knowingly submits a false or misleading statement relating to a PIP claim or charges. See Fla. Stat. § 627.736.

31. Under the False and Fraudulent Insurance Claims Statute, it is unlawful for a health care provider to engage in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments or deductibles from PIP patients. See Fla. Stat. § 817. 234(7).

32. Failure to make a good-faith effort to collect co-payments or deductibles renders the charges submitted by a health care provider unlawful and noncompensable.

6

33.     Furthermore, Florida's Patient Brokering Act, Fla. Stat. § 817.505, broadly prohibits any person from offering, paying, soliciting, or receiving any commission, bonus, rebate, kickback, or bribe – directly or indirectly, in cash or in kind – or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.

34.     Likewise, Florida's Anti-Kickback Statute, Fla. Stat. § 456.054, prohibits any health care provider from offering, paying, soliciting, or receiving a kickback, directly or indirectly, overtly or covertly, in cash or in kind, in exchange for patient referrals. Violations of the Anti-Kickback Statute also constitute violations of the Patient Brokering Act.

35.     Insurers such as GEICO are not required to make any payments of PIP Benefits to clinics and other health care providers that operate in violation of the Patient Brokering Act or Anti-Kickback Statute, whether or not the underlying health care services were medically necessary or actually provided.

36.     Subject to certain exceptions not applicable here, the Self-Referral Act prohibits health care providers from referring patients for health care services to any entity in which the health care provider is an investor or has an investment interest. See Fla. Stat. § 456.053(5)(b).

37.     In this context, chiropractors are defined as "health care providers" under the Self-Referral Act.

38.     The Self-Referral Act also provides that:

Any health care provider or other entity that enters into an arrangement or scheme, such as a cross-referral arrangement, which the physician or entity knows or should know has a principal purpose of assuring referrals by the physician to a particular entity which, if the physician directly made referrals to such entity, would be in violation of this section, shall be subject to a civil penalty of not more than $100,000 for each such circumvention arrangement or scheme to be imposed and collected by the appropriate board.

39.     Thus, pursuant to the Self-Referral Act, subject to certain exceptions not applicable here, health care providers are also prohibited from entering into a scheme or arrangement to

indirectly cause patients to be referred for health care services to any entity in which the health care provider is an investor or has an investment interest.

40.     Pursuant to the Self-Referral Act, health care providers may not submit any claim for payment to any insurer for services rendered pursuant to an unlawful self-referral.

41.     Moreover, health care providers that collect payments for services rendered pursuant to an unlawful self-referral must "refund such amount on a timely basis."

42.     More generally, health care providers that operate in violation of the Self-Referral Act are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided.

43.     Subject to certain limited exceptions, a license issued by the Florida Agency for Health Care Administration is required in order to operate a "clinic" in Florida. See Fla. Stat. § 400.991(1)(a). The Clinic Act defines "clinic" to mean "an entity where health care services are provided to individuals and which tenders charges for reimbursement for such services, including a mobile clinic and a portable equipment provider." See Fla. Stat. § 400.9905.

44.     However, the Clinic Act provides an exemption from the clinic licensing requirements for:

> A sole proprietorship, group practice, partnership, or corporation that provides health care services by licensed health care practitioners . . . that is wholly owned by one or more licensed health care practitioners, or the licensed health care practitioners set forth in this paragraph and the spouse, parent, child, or sibling of a licensed health care practitioner if one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws. However, a health care practitioner may not supervise services beyond the scope of the practitioner's license … .

Fla. Stat. § 400.9905(4)(g).

45.     Therefore, in order for a health care practice to qualify for this "wholly owned" exemption under the Clinic Act, the licensed health care practitioner who "wholly owns" the

practice has a continuing obligation to legitimately supervise the business activities of the clinic and remain legally responsible for the clinic's compliance with all federal and state laws.

46.     Furthermore, in order for a health care practice to qualify for the "wholly owned" exemption to the Clinic Act's licensing requirements, the practice may not provide services that are outside of the scope of the supervising practitioner-owner's professional license.

47.     Pursuant to the Clinic Act, health care practices operating in Florida without a valid exemption from the health care clinic licensing requirements must – among other things – appoint a medical director who must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful", and take immediate corrective action upon discovery of a fraudulent or unlawful charge. See Fla. Stat. § 400.9935(1).  In addition, a clinic medical director must "[e]nsure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided." See Fla. Stat. § 400.9935(1).

48.     Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed . . . but that is not so licensed, or that is otherwise operating in violation of this part . . . is an unlawful charge" and is ineligible for payment. See Fla. Stat. § 400.9935(3).

49.     Pursuant to the No-Fault Law, a "wholly owned" practice may not recover PIP Benefits unless the owner is a physician, chiropractor, or dentist, or unless the practice otherwise has a clinic license. Practices that purport to be "wholly owned" by advanced practices registered nurses, and that do not otherwise have clinic licenses, may not collect PIP Benefits. See Fla. Stat. § 627.736(5)(h).

50.     Florida law regulates advertising by chiropractors, and prohibits chiropractors from – among other things – advertising "under a name other than one's own", engaging in "[f]alse, deceptive, or misleading advertising", and "[s]oliciting patients either personally or through an

agent, unless such solicitation falls into a category of solicitations approved by rule of the board [of chiropractic medicine]". <u>See</u> Fla. Stat. § 460.413.

51.     Similarly, the Florida Board of Chiropractic has promulgated various rules regarding chiropractor advertising. Among other things, these rules:

(i)     prohibit chiropractors from disseminating or causing the dissemination of any advertisement or advertising which is in any way fraudulent, false, deceptive or misleading; and

(ii)    require all advertisements generated by or on behalf of a chiropractor to disclose that they are generated by or on behalf of a chiropractor by including a reference to the chiropractor by name and degree.

(iii)   prohibit chiropractors from disseminating or causing the dissemination of any advertisement or advertising which contains a reference to any other degree such as "M.D." or "D.O." unless the chiropractor has actually received such a degree or certification; and

(iv)    prohibit chiropractors from disseminating or causing the dissemination of any advertisement or advertising which contains a representation that the chiropractor has received any license or recognition from the State of Florida which is superior to the license and recognition granted to any chiropractor.

<u>See</u> F.A.C. Rule 64B2-15.001.

52.     Health care providers that operate in violation of the Chiropractor Advertising Laws are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided.

53.     Likewise, insurers such as GEICO are not required to make any payments of PIP Benefits to health care providers that operate in violation of the Chiropractor Advertising Laws, whether or not the underlying health care services were medically necessary or actually provided.

## II.     <u>Defendants' Interrelated Fraudulent Schemes</u>

54.     Since at least 2020, and continuing through the present day, Defendants conceived and implemented interrelated fraudulent schemes in which they billed GEICO and other Florida

automobile insurers millions of dollars for medically unnecessary, illusory, unlawful, and otherwise non-reimbursable services.

**A.      The Unlawful Operation of Simpson Chiropractic and Urgent Care Chiropractic Without Supervision by Simpson**

55.      Although Simpson Chiropractic and Urgent Care Chiropractic purported to be exempt from the Clinic Act's health care clinic licensure requirements because they purported to be "wholly owned" by Simpson, both Simpson Chiropractic and Urgent Care Chiropractic operated without a valid exemption and, as a result, operated as unlicensed health care clinics in violation of the Clinic Act.

56.      In particular, Simpson failed to supervise Simpson Chiropractic and Urgent Care Chiropractic's business activities – as required by the Clinic Act – and, as a result, Simpson Chiropractic and Urgent Care Chiropractic did not qualify for the "wholly owned" exemption from the Clinic Act's health care clinic licensure requirements.

57.      Simpson did not legitimately supervise the business activities of Simpson Chiropractic and Urgent Care Chiropractic, inasmuch as Simpson never conducted reviews of the billing or treatment records from Simpson Chiropractic and Urgent Care Chiropractic to ensure that the billing was not fraudulent or unlawful, and – to the contrary – participated in the submission of the fraudulent and unlawful charges through Simpson Chiropractic and Urgent Care Chiropractic to GEICO and other insurers.

49.  Indeed, given the fraudulent treatment and billing protocol described below – which was pervasive across all of the billing submitted to GEICO through Simpson Chiropractic and Urgent Care Chiropractic – there is simply no way that Simpson could have legitimately supervised the business activities of Simpson Chiropractic and Urgent Care Chiropractic to ensure that the billing was not fraudulent or ensure compliance with all applicable federal and state laws as required by the Clinic Act.

50.     Had Simpson legitimately supervised the business activities of Simpson Chiropractic and Urgent Care Chiropractic, he would have noted, among other things, that:

(i)     Simpson Chiropractic and Urgent Care Chiropractic were – as set forth herein – operated in pervasive violation of the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, the Chiropractor Advertising Laws, the Self-Referral Act; and the False and Fraudulent Insurance Claims Statute;

(ii)    Simpson Chiropractic and Urgent Care Chiropractic unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its patients in violation of Florida law;

(iii)   the Fraudulent Services purportedly provided by and billed through Simpson Chiropractic and Urgent Care Chiropractic were not medically necessary or lawfully billed to GEICO, and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol;

(iv)    in many cases, the Fraudulent Services purportedly provided by and billed through Simpson Chiropractic and Urgent Care Chiropractic were never legitimately provided in the first instance; and

(v)     the billing codes used for the Fraudulent Services purportedly provided by and billed through Simpson Chiropractic and Urgent Care Chiropractic misrepresented and exaggerated the level of services that were provided in order to fraudulently inflate the charges submitted to GEICO.

51.     Accordingly, neither Simpson Chiropractic nor Urgent Care Chiropractic qualified for the "wholly owned" exemption from licensure as a "health care clinic" set forth in Section 400.9905(4)(g). Nor did Simpson Chiropractic and Urgent Care Chiropractic qualify for any other exemption to the Clinic Act, or have a medical director and clinic license as required for a health care clinic without an exemption. As a result, both Simpson Chiropractic and Urgent Care Chiropractic operated – at all relevant times – in violation of the Clinic Act.

**B.     The Unlawful Operation of Wellness Works Without Supervision by Rizvi and in Violation of the Clinic Act**

52.     As part of Wellness Works' fraudulent and unlawful scheme, Rizvi and Simpson operated Wellness Works in pervasive violation of the Clinic Act.

53.     Wellness Works was a "clinic" within the meaning of the Clinic Act, in that it was an entity "where health care services [were] provided to individuals and which tender[ed] charges for reimbursement for services."

54.     However, Wellness Works did not have a clinic license or a medical director.

55.     Instead, Wellness Works purported to be solely owned by Rizvi, and purported to operate under the "wholly owned" exemption from the Clinic Act's licensing and regulatory requirements.

56.     However, under the No-Fault Law, a "wholly owned" practice may not recover PIP Benefits unless the owner is a physician, chiropractor, or dentist, or unless the practice otherwise has a clinic license.

57.     As set forth above, Rizvi is an advanced practice registered nurse. Rizvi is not, and has never been licensed as a physician, chiropractor, or dentist.

58.     What is more, Wellness Works did not have a clinic license or medical director.

59.     Because Wellness Works purported to be owned by Rizvi, an advanced practice registered nurse, and did not have a clinic license, it was ineligible to collect PIP reimbursement in the first instance.

60.     Furthermore, Wellness Works could only qualify for the "wholly owned" exemption if it was owned by a licensed health care practitioner who legitimately supervised its business activities and remained legally responsible for its compliance with all federal and state laws.

61.     Neither Rizvi nor Simpson ever legitimately supervised the business activities of Wellness Works, inasmuch as neither Rizvi nor Simpson ever conducted legitimate reviews of the billing or treatment records from Wellness Works to ensure that the billing was not fraudulent or

unlawful. To the contrary, Rizvi and Simpson participated in the submission of the fraudulent and unlawful charges through Wellness Works to GEICO and other insurers.

62.     Indeed, given the fraudulent treatment and billing activities described below – which were pervasive across all of the billing submitted to GEICO through Wellness Works – there is no way that Rizvi or Simpson could have legitimately supervised the business activities of those clinics to ensure that the billing was not fraudulent.

63.     Had Rizvi (or Simpson, or any other health care practitioner) legitimately supervised the business activities of Wellness Works, they would have noted, among other things, that:

(i)     Wellness Works was – as set forth herein – operated in pervasive violation of the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, the Self-Referral Act, and the False and Fraudulent Insurance Claims Statute;

(ii)    Wellness Works unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its patients in violation of the False and Fraudulent Insurance Claims Statute;

(iii)   the Fraudulent Services purportedly provided by and billed through Wellness Works were not medically necessary or lawfully billed to GEICO, and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol;

(iv)    in many cases, the Fraudulent Services purportedly provided by and billed through Wellness Works were never legitimately provided in the first instance; and

(v)     the billing codes used for the Fraudulent Services purportedly provided by and billed through Wellness Works misrepresented and exaggerated the level of services that were provided in order to fraudulently inflate the charges submitted to GEICO.

64.     Accordingly, Wellness Works never qualified for the "wholly owned" exemption from licensure as a "health care clinic" set forth in Section 400.9905(4)(g). Nor did Wellness Works qualify for any other exemption to the Clinic Act, or have a medical director and clinic license as required for a health care clinic without an exemption. As a result, Wellness Works operated – at all relevant times – in violation of the Clinic Act.

**C.     The Defendants' Unlawful General Business Practice of Failing to Make a Good-Faith Effort to Collect Co-Payments or Deductibles from Their Patients.**

65.     During the relevant time period, Simpson Chiropractic, Urgent Care Chiropractic, Simpson, Wellness Works, and Rizvi unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

66.     In keeping with this fact, in virtually all of the thousands of bills (i.e., the HCFA-1500 forms) submitted through Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works to GEICO for the Defendants' Fraudulent Services, the Defendants represented that they did not collect any money, whether it be a co-payment or a deductible, from the patients.

67.     In the claims identified in Exhibits "1" - "3", Defendants routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because Defendants engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

68.     In the context, Simpson and Rizvi did not, and could not have, legitimately supervised the business activities of Simpson Chiropractic, Urgent Care, and Wellness Works.

69.     Had Simpson and Rizvi legitimately supervised the business activities of Simpson Chiropractic, Urgent Care, and Wellness Works, they would have ensured – among other things – that Simpson Chiropractic, Urgent Care, and Wellness Works complied with the False and Fraudulent Insurance Claims Statute.

70.     Simpson and Rizvi failed to do so because they never legitimately supervised the business activities of Simpson Chiropractic, Urgent Care, or Wellness Works.

15

**D.     The Violations of the Patient Brokering Act and the Anti-Kickback Statute**

71.     As set forth above, the Patient Brokering Act and Anti-Kickback Statute broadly prohibit any person from offering, paying soliciting, or receiving any commission, bonus, rebate, kickback, or bribe – directly or indirectly, in cash or in kind – or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.

72.     Moreover, and as also set forth above, PIP reimbursement for health care services is limited to $2,500.00 per injured person, unless a physician, physician assistant, or advanced practice registered nurse determines that the injured person suffered from an "emergency medical condition", in which case, a provider can be reimbursed up to $10,000.00 for health care services.

73.     Simpson Chiropractic, Urgent Care Chiropractic, and Simpson did not have a physician, physician assistant, or advanced practice nurse on staff to render "emergency medical condition" diagnoses, and therefore needed to find another health care provider to render the "emergency medical condition" diagnoses that would enable them to submit the maximum amount of fraudulent and unlawful PIP billing, per Insured, to GEICO and other insurers.

74.     However, no legitimate health care provider would purport to diagnose the Insureds in the claims identified in Exhibits "1" - "3" with any "emergency medical conditions", because – to the extent that the Insureds in the claims identified in Exhibits "1" - "3" had any presenting problems at all as the result of their typically-minor automobile accidents – the problems virtually always were low or minimal severity soft tissue injuries such as sprains and strains, which did not legitimately constitute "emergency medical conditions".

75.     For instance, to the extent that there were police reports regarding the Insureds' accidents in the claims identified in Exhibits "1" - "3", the police reports typically indicated that no one was seriously injured in the accidents, or injured at all.

16

76.     What is more, in many of the claims identified in Exhibits "1" - "3", the Insureds did not seek treatment at any hospital as the result of their accidents and, to extent that the Insureds in the claims identified in Exhibits "1" - "3" did seek treatment at a hospital following their accidents, they virtually always were briefly observed on an outpatient basis, and then discharged with nothing more serious than a minor soft tissue injury diagnosis.

77.     Accordingly, Simpson Chiropractic, Urgent Care Chiropractic, and Simpson needed to find a fraudulent physician, physician assistant, or advanced practice registered nurse who would be willing to falsely diagnose their patients with "emergency medical conditions" so as to allow them to bill an additional $7,500.00 per patient.

78.     At the same time, Wellness Works and Rizvi wanted to submit as much PIP billing as possible for expensive and medically unnecessary examinations they would purport to provide, without regard for the fact that the Insureds had not suffered any injuries that would warrant these examinations.

79.     However, in order to bill GEICO and other insurers for medically unnecessary and illusory examinations, Wellness Works and Rizvi needed to obtain patient referrals from other health care providers, such as Simpson Chiropractic, Urgent Care Chiropractic, and Simpson.

80.     Accordingly, Simpson Chiropractic, Urgent Care Chiropractic, Simpson, Wellness Works, and Rizvi entered into a secret and unlawful patient brokering agreement, whereby in exchange for patient referrals from Simpson Chiropractic, Urgent Care Chiropractic, and Simpson for expensive and medically unnecessary examinations, Wellness Works and Rizvi, at Simpson's direction, falsely caused the Insureds to be diagnosed with ersatz "emergency medical conditions" – which allowed Simpson Chiropractic, Urgent Care Chiropractic, Simpson to bill GEICO and other insurers up to an additional $7,500.00 per insured – and then to refer each Insured back to

Simpson Chiropractic, Urgent Care Chiropractic, Simpson for the continued provision of additional medically unnecessary chiropractic and physical therapy services.

81.     In reality, these were "pay-to-play" arrangements that caused Simpson Chiropractic, Urgent Care Chiropractic, Simpson, Wellness Works, and Rizvi to provide medically unnecessary patient referrals in violation of the Patient Brokering Act and Anti-Kickback Statute.

82.     For example:

(i)      On or about August 10, 2020, Simpson Chiropractic and Simpson referred an Insured named AK to Wellness Works and Rizvi for a medically unnecessary examination which was then billed through Wellness Works to GEICO. As unlawful compensation for the referral, Wellness Works and Rizvi – at Simpson's direction – falsely diagnosed the Insured with an "emergency medical condition", which enabled Simpson Chiropractic and Simpson to submit thousands of dollars in additional PIP billing through Simpson Chiropractic to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(ii)     On or about November 25, 2020, Simpson Chiropractic and Simpson referred an Insured named KS to Wellness Works and Rizvi for a medically unnecessary examination, which then was billed through Wellness Works to GEICO. As unlawful compensation for the referral, Wellness Works and Rizvi – at Simpson's direction – falsely diagnosed the Insured with an "emergency medical condition", which enabled Simpson to submit thousands of dollars in additional PIP billing through Simpson Chiropractic to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(iii)    On August 12, 2021, Urgent Care Chiropractic and Simpson caused an Insured named BN to be referred Wellness Works and Rizvi for a medically unnecessary examination, which was then billed through Wellness Works to GEICO. As unlawful compensation for the referral, Wellness Works and Rizvi – at Simpson's direction – falsely diagnosed the Insured with an "emergency medical condition", which enabled Urgent Care Chiropractic and Simpson to submit thousands of dollars in additional PIP billing through Urgent Care Chiropractic to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(iv)     On or about May 25, 2022, Simpson Chiropractic and Simpson referred an Insured named EG to Wellness Works and Rizvi for a medically unnecessary examination, which then were billed through Wellness Works to GEICO. As unlawful compensation for the referral, Wellness Works and Rizvi – at Simpson's direction – falsely diagnosed the Insured with an "emergency medical condition", which enabled Simpson Chiropractic and Simpson to submit thousands of dollars in

18

additional PIP billing through Simpson Chiropractic to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(v)    On or about August 1, 2022, Simpson Chiropractic and Simpson referred an Insured named BW to Wellness Works and Rizvi for a medically unnecessary examination, which then were billed through Wellness Works to GEICO. As unlawful compensation for the referral, Wellness Works and Rizvi – at Simpson's direction – falsely diagnosed the Insured with an "emergency medical condition", which enabled Simpson Chiropractic and Simpson to submit thousands of dollars in additional PIP billing through Simpson to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(vi)    On or about October 3, 2022, Simpson Chiropractic and Simpson referred an Insured named WN to Wellness Works and Rizvi for a medically unnecessary examination, which then were billed through Wellness Works to GEICO. As unlawful compensation for the referral, Wellness Works and Rizvi – at Simpson's direction – falsely diagnosed the Insured with an "emergency medical condition", which enabled Simpson Chiropractic and Simpson to submit thousands of dollars in additional PIP billing through Simpson Chiropractic to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(vii)    On or about March 22, 2023, Simpson Chiropractic and Simpson referred an Insured named LM to Wellness Works and Rizvi for a medically unnecessary examination, which then were billed through Wellness Works to GEICO. As unlawful compensation for the referral, Wellness Works and Rizvi – at Simpson's direction – falsely diagnosed the Insured with an "emergency medical condition", which enabled Simpson Chiropractic and Simpson to submit thousands of dollars in additional PIP billing through Simpson Chiropractic to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(viii)    On or about August 23, 2023, Simpson Chiropractic and Simpson referred an Insured named JC to Wellness Works and Rizvi for a medically unnecessary examination, which then were billed through Wellness Works to GEICO. As unlawful compensation for the referral, Wellness Works and Rizvi – at Simpson's direction – falsely diagnosed the Insured with an "emergency medical condition", which enabled Simpson Chiropractic and Simpson to submit thousands of dollars in additional PIP billing through Simpson Chiropractic to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(ix)    On or about May 1, 2024, Urgent Care Chiropractic and Simpson caused an Insured named DM to be referred Wellness Works and Rizvi for a medically unnecessary examination, which was then billed through Wellness Works to GEICO. As unlawful compensation for the referral, Wellness Works and Rizvi – at Simpson's

direction – falsely diagnosed the Insured with an "emergency medical condition", which enabled Urgent Care Chiropractic and Simpson to submit thousands of dollars in additional PIP billing through Urgent Care Chiropractic to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(x)     On or about July 15, 2024, Urgent Care Chiropractic and Simpson caused an Insured named KB to be referred Wellness Works and Rizvi for a medically unnecessary examination, which was then billed through Wellness Works to GEICO. As unlawful compensation for the referral, Wellness Works and Rizvi – at Simpson's direction – falsely diagnosed the Insured with an "emergency medical condition", which enabled Urgent Care Chiropractic and Simpson to submit thousands of dollars in additional PIP billing through Urgent Care Chiropractic to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

83.     These are only representative examples. In the claims identified in Exhibits "1" - "3", the Defendants routinely and unlawfully made and received patient referrals in exchange for compensation, in violation of the Patient Brokering Act and Anti-Kickback Statute.

84.     In this context, there are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident.

85.     An individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured in a given automobile accident.

86.     As set forth above, in the claims identified in Exhibits "1" - "3", almost all of the Insureds whom the Defendants purported to treat were involved in relatively minor accidents, and did not suffer any serious injuries in their accidents, to the extent that they suffered any injuries at all.

87.     It is highly improbable that any two or more Insureds involved in any one of the relatively minor automobile accidents in the claims identified in Exhibits "1" - "3"  would suffer from injuries so similar that they would all require referrals from Simpson Chiropractic, Urgent Care Chiropractic, and Simpson to Rizvi and Wellness Works on or about the same date for

20

medically unnecessary examinations where they would then all receive purported "emergency medical condition" diagnoses from Rizvi and Wellness Works.

88.     It is even more improbable – to the point of impossibility – that this would occur repeatedly within the cohort of Insureds who purportedly received treatment from the Defendants.

89.     Even so – and in keeping with the fact that the Defendants' referrals were based upon unlawful compensation, rather than medical necessity – this repeatedly occurred within the cohort of Insureds who purportedly received treatment from the Defendants.

90.     For example:

(i)     On August 8, 2020, two Insureds – RD and SJ – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Simpson Chiropractic and Simpson to Rizvi and Wellness Works on or about the same date after their accident. Even so, on or about August 12, 2020, Simpson Chiropractic and Simpson referred both of these Insureds Rizvi and Wellness Works for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(ii)    On February 24, 2021, two Insureds – HB and DL – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not require referrals from Urgent Care Chiropractic and Simpson to Rizvi and Wellness Works on or about the same date after their accident. Even so, on or about March 4, 2021, Urgent Care Chiropractic and Simpson caused both of these Insureds to be referred to Wellness Works and Rizvi for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(iii)   On February 15, 2022, three Insureds – KG, MG, and TG – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any

injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Simpson Chiropractic and Simpson to Rizvi and Wellness Works on or about the same date after their accident. Even so, on or about February 16, 2022, Simpson Chiropractic and Simpson referred all three of these Insureds to Wellness Works and Rizvi for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(iv)     On June 6, 2022, two Insureds – DL and JL – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Simpson Chiropractic and Simpson to Rizvi and Wellness Works on or about the same date after their accident. Even so, on or about June 8, 2022, Simpson Chiropractic and Simpson referred both of these Insureds to Wellness Works and Rizvi for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(v)      On October 1, 2022, two Insureds – EH and WN – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Simpson Chiropractic and Simpson to Wellness Works and Rizvi on or about the same date after their accident. Even so, on or about October 3, 2022, Simpson Chiropractic and Simpson referred both of these Insureds to Wellness Works and Rizvi for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(vi)     On November 27, 2022, two Insureds – ND and SK – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Simpson Chiropractic and Simpson to Rizvi and Wellness Works on or about the same date after their accident. Even so, on or about November 28, 2022, Simpson Chiropractic and Simpson referred both of these Insureds to

Wellness Works and Rizvi for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(vii)    On January 18, 2023, two Insureds – CP and CR – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Urgent Care Chiropractic and Simpson to Rizvi and Wellness Works on or about the same date after their accident. Even so, on or about January 27, 2023, Urgent Care Chiropractic and Simpson caused both of these Insureds to be referred to Wellness Works and Rizvi for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(viii)   On February 8, 2023, <u>three</u> Insureds – MV. AV, and GV – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not require referrals from Urgent Care Chiropractic and Simpson to Rizvi and Wellness Works on or about the same date after their accident. Even so, on or about April 3, 2023, Simpson Chiropractic and Simpson referred all three of these Insureds to Wellness Works and Rizvi for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(ix)    On May 12, 2023, two Insureds – JM and RC – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Simpson Chiropractic and Simpson to Rizvi and Wellness Works on or about the same date after their accident. Even so, on or about May 16, 2023, Simpson Chiropractic and Simpson referred both of these Insureds to Wellness Works and Rizvi for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(x)    On June 23, 2024, two Insureds – AC and NW – were involved in the same automobile accident. These Insureds were different ages, in different physical

condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Simpson Chiropractic and Simpson to Rizvi and Wellness Works on or about the same date after their accident. Even so, on or about June 28, 2024, Simpson Chiropractic and Simpson referred both of these Insureds to Wellness Works and Rizvi for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

91.     These are only representative examples. In order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme, Simpson Chiropractic, Urgent Care Chiropractic, and Simpson routinely referred -- or caused to be referred -- multiple Insureds who had been involved in the same accident to Wellness Works and Rizvi for medically unnecessary examinations, despite the fact that the Insureds were differently situated and in any case did not require the Defendants' Fraudulent Services.

92.     In the claims identified in Exhibits "1" - "3", Simpson Chiropractic, Urgent Care Chiropractic, Simpson, Wellness Works, and Rizvi routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because they were provided – to the extent that they were provided at all – pursuant an illegal patient brokering and kickback scheme.

**E.      The Violations of the Self-Referral Act**

93.     As set forth herein, subject to certain exceptions which are not applicable here, the Self-Referral Act prohibits any chiropractor from referring patients for health care services to any entity in which the chiropractor is an investor or has an investment interest.

94.     In the context of the Self-Referral Act, although Rizvi nominally was the sole owner of Wellness Works, in actuality, Wellness Works was at all relevant times secretly owned and controlled, in part, by Simpson.

95.    In keeping with the fact that Wellness Works was secretly owned and controlled by Simpson: (i) upon information and belief based on the endorsements on the checks issued by GEICO in payment of Wellness Works' PIP claims, the checks issued to Wellness Works were deposited by Simpson, not Rizvi; (ii) Simpson owned and controlled the property from which Wellness Works operates; and (iii) virtually all of the Insureds who purported to receive treatment at Wellness Works were referred to Wellness Works by Simpson or at his direction.

96.    Accordingly, Simpson – directly or indirectly – could not lawfully self-refer Insureds from Simpson Chiropractic or Urgent Care Chiropractic (which he owned) to Wellness Works (which he also secretly owned) for the patient examinations that Wellness Works purported to provide.

97.    Nonetheless, as set forth herein, Simpson routinely unlawfully caused Insureds to be self-referred from Simpson Chiropractic or Urgent Care Chiropractic to Wellness Works for purported examinations.

98.    Then, Rizvi – at Simpson's direction – would purport to provide the putative initial examinations at Wellness Works, and would virtually always cause the Insureds to be falsely diagnosed with an "emergency medical condition".

99.    Then, at the conclusion of the patient examinations, and stemming from the false "emergency medical condition diagnosis", Simpson caused Rizvi to unlawfully self-refer the Insureds back to Simpson Chiropractic or Urgent Care Chiropractic for the continued provision of medically unnecessary physical therapy and chiropractic services.

100.    For example:

(i)    On or about August 17, 2020, Simpson caused an Insured named ER to be self-referred from Urgent Care Chiropractic to Wellness Works for a medically unnecessary examination in order to obtain a predetermined, and false, emergency medical condition diagnoses after which Simpson caused Wellness Works and Rizvi to unlawfully self-refer ER back to Urgent Care Chiropractic for the

continued provision of medically unnecessary physical therapy and chiropractic services.

(ii)     On or about October 26, 2020, Simpson caused an Insured named KL to be self-referred from Simpson Chiropractic to Wellness for a medically unnecessary examination in order to obtain a predetermined, and false, emergency medical condition diagnoses after which Simpson caused Wellness Works and Rizvi to unlawfully self-refer KL back to Simpson Chiropractic for the continued provision of medically unnecessary physical therapy and chiropractic services.

(iii)    On or about June 14, 2021, Simpson caused an Insured named RL to be self-referred from Simpson Chiropractic to Wellness Works for a medically unnecessary examination in order to obtain a predetermined, and false, emergency medical condition diagnoses after which Simpson caused Wellness Works and Rizvi to unlawfully self-refer RL back to Simpson Chiropractic for the continued provision of medically unnecessary physical therapy and chiropractic services.

(iv)    On or about May 10, 2022, Simpson caused an Insured named KA to be self-referred from Simpson Chiropractic to Wellness Works for a medically unnecessary examination in order to obtain a predetermined, and false, emergency medical condition diagnoses after which Simpson caused Wellness Works and Rizvi to unlawfully self-refer KA back to Simpson Chiropractic for the continued provision of medically unnecessary physical therapy and chiropractic services.

(v)     On or about January 18, 2023, Simpson caused an Insured named JL to be self-referred from Urgent Care Chiropractic to Wellness Works for a medically unnecessary examination in order to obtain a predetermined, and false, emergency medical condition diagnoses after which Simpson caused Wellness Works and Rizvi to unlawfully self-refer JL back to Urgent Care Chiropractic for the continued provision of medically unnecessary physical therapy and chiropractic services.

(vi)    On or about September 15, 2023, Simpson caused an Insured named ML to be self-referred from Simpson Chiropractic to Wellness Works for a medically unnecessary examination in order to obtain a predetermined, and false, emergency medical condition diagnoses after which Simpson caused Wellness Works and Rizvi to unlawfully self-refer ML back to Simpson Chiropractic for the continued provision of medically unnecessary physical therapy and chiropractic services.

(vii)   On or about December 18, 2023, Simpson caused an Insured named ML to be self-referred from Urgent Care Chiropractic to Wellness Works for a medically unnecessary examination in order to obtain a predetermined, and false, emergency medical condition diagnoses after which Simpson caused Wellness Works and Rizvi to unlawfully self-refer ML back to Urgent Care Chiropractic for the continued provision of medically unnecessary physical therapy and chiropractic services.

(viii)  On or about February 2, 2024, Simpson caused an Insured named JD to be self-referred from Simpson Chiropractic to Wellness Works for a medically

unnecessary examination in order to obtain a predetermined, and false, emergency medical condition diagnoses after which Simpson caused Wellness Works and Rizvi to unlawfully self-refer JD back to Simpson Chiropractic for the continued provision of medically unnecessary physical therapy and chiropractic services.

(ix)     On or about February 8, 2024, Simpson caused an Insured named VE to be self-referred from Simpson Chiropractic to Wellness Works for a medically unnecessary examination in order to obtain a predetermined, and false, emergency medical condition diagnoses after which Simpson caused Wellness Works and Rizvi to unlawfully self-refer VE back to Simpson Chiropractic for the continued provision of medically unnecessary physical therapy and chiropractic services.

(x)      On or about July 15, 2024, Simpson caused an Insured named KB to be self-referred from Urgent Care Chiropractic to Wellness Works for a medically unnecessary examination in order to obtain a predetermined, and false, emergency medical condition diagnoses after which Simpson caused Wellness Works and Rizvi to unlawfully self-refer KB back to Urgent Care Chiropractic for the continued provision of medically unnecessary physical therapy and chiropractic services.

101.    These are only representative examples. In the claims identified in Exhibits "1" - "3", Simpson routinely unlawfully self-referred Insureds from Simpson Chiropractic or Urgent Care Chiropractic to Wellness Works for patient examinations whereupon Rizvi and Wellness Works – at Simpson's direction – would virtually always falsely diagnose the Insured with an "emergency medical condition".

102.    In the claims identified in Exhibits "1" - "3", Simpson Chiropractic, Urgent Care Chiropractic, Simpson, Wellness Works, and Rizvi routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because they were provided – to the extent that they were provided at all – in violation of the Self-Referral Act.

F.      **The Defendants' Fraudulent Charges for Initial Examinations**

103.    In the claims identified in Exhibits "1" - "3", almost none of the Insureds whom the Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced.

104.     Even so, in the claims identified in Exhibits "1" - "3", the Defendants purported to subject virtually every Insured to a medically unnecessary course of "treatment" that was provided pursuant to pre-determined, fraudulent protocols designed to maximize the billing that they could submit to insurers, including GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

105.     The Defendants purported to provide their pre-determined fraudulent treatment protocols to the Insureds in the claims identified in Exhibits "1" - "3" without regard for the Insureds' individual symptoms or presentation, or – in most cases – the total absence of any actual continuing medical problems arising from any actual automobile accidents.

106.     Each step in the Defendants' fraudulent treatment protocols was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit the Defendants to generate and falsely justify the maximum amount of fraudulent PIP billing for each Insured.

107.     No legitimate physician, chiropractor, nurse, clinic, or other health care provider would permit the fraudulent treatment and billing protocols described below to proceed under his, her, or its auspices.

108.     The Defendants permitted the fraudulent treatment and billing protocols described below to proceed under their auspices because: (i) Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works were, at all relevant times, operating in violation of the Clinic Act, without legitimate oversight or medical directors who legitimately fulfilled their statutory duties as medical directors; and (ii) the Defendants sought to profit from the fraudulent billing they submitted to GEICO and other insurers.

**1.      The Fraudulent and Unlawful Claims for Initial Examinations**

109.    As a first step in the Defendants' fraudulent treatment and billing protocol, each of the Insureds in the claims identified in Exhibits "1" - "3" purportedly received an initial examination at Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works, respectively.

110.    As set forth in Exhibit "1", Simpson Chiropractic and Simpson then billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99203, typically resulting in a charge of $245.00 for each initial examination that they purported to provide.

111.    Similarly, as set forth in Exhibit "2", Urgent Care Chiropractic and Simpson then billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99203, typically resulting in a charge of $245.00 for each initial examination that they purported to provide.

112.    As set forth in Exhibit "3", upon receiving a referral pursuant to Defendants' unlawful patient brokering, kickback, and self-referral scheme, Rizvi and Wellness Works – at Simpson's direction – billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT codes 99204 and 99205, typically resulting in a charge of between $375.00 and $410.00 for each initial examination that they purported to provide.

113.    In the claims for initial examinations identified in Exhibits "1" - "3", the charges for the initial examinations were fraudulent in that they misrepresented Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works' eligibility to collect PIP Benefits in the first instance.

114.    In fact, and as set forth herein, Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works never were eligible to collect PIP Benefits, inasmuch as they were operated in violation of Florida law.

115.    As set forth below, the charges for the initial examinations identified in Exhibits "1" - "3" also were fraudulent in that they misrepresented the nature, extent, and results of the initial examinations.

**a.    Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

116.    In the claims for initial examinations identified in Exhibits "1" - "3", Simpson Chiropractic, Urgent Care Chiropractic, Simpson, Rizvi, and Wellness Works routinely misrepresented the severity of the Insureds' presenting problems.

117.    Pursuant to the American Medical Association's CPT Assistant, which governs the use of health care billing codes, during the relevant time period, the use of CPT codes 99204 and 99205 to bill for an initial patient examination typically required that the Insured present with problems of moderate to high severity.

118.    Pursuant to the CPT Assistant, during the relevant time period, the use of CPT code 99203 to bill for an initial patient examination typically required that the Insured present with problems of moderate severity.

119.    However, to the extent that the Insureds in the claims identified in Exhibits "1" - "3" had any presenting problems at all as the result of their typically-minor automobile accidents, the problems virtually always were low or minimal severity soft tissue injuries such as sprains and strains.

120.    Even so, during the relevant time period, in the claims for initial examinations identified Exhibits "1" - "3", Simpson Chiropractic, Urgent Care Chiropractic, and Simpson, Rizvi and Wellness Works routinely falsely represented that the Insureds presented with problems of moderate severity or moderate to high severity.

121.    For example:

(i)    On January 23, 2020, an Insured named KL was involved in an automobile accident. The contemporaneous police report indicated that there was minor

damage to KL's vehicle and that KL's vehicle was drivable following the accident. The police report further indicated that KL was not injured and did not complain of any pain at the scene. Nonetheless, later that same day, KL presented to St. Lucie Medical Center emergency room where she was briefly observed on an outpatient basis and released shortly thereafter with no serious injury diagnosis. To the extent that KL experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of KL on November 6, 2020, Wellness Works and Rizvi – at Simpson's direction – billed GEICO for the initial examination using CPT code 99205, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(ii)     On June 11, 2020, an Insured named ER was involved in an automobile accident. The contemporaneous police report indicated that ER was not injured and did not complain of any pain at the scene. In keeping with the fact that ER was not seriously injured, ER did not visit any hospital emergency room following the accident. To the extent that ER experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of ER on June 29, 2020, Urgent Care Chiropractic and Simpson billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iii)    On October 6, 2020, an Insured named GF was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to Gabriella Ferrera's vehicle and that GF's vehicle was drivable following the accident. The police report further indicated that GF was not injured and did not complain of any pain at the scene. In keeping with the fact that GF was not seriously injured, GF did not visit any hospital emergency room following the accident. To the extent that GF experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of GF on October 12, 2020, Urgent Care Chiropractic and Simpson billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

122.    These are only representative examples. In the claims for initial examinations identified in Exhibits "1" - "3", Simpson Chiropractic, Urgent Care Chiropractic, Simpson, Rizvi and Wellness Works represented that the Insureds presented with problems of moderate severity or moderate to high severity in order to: (i) create a false basis for their charges for the examinations under CPT codes 99205, 99204, and 99203, because examinations billable under CPT codes 99205, 99204, and 99203 are reimbursable at higher rates than examinations involving

presenting problems of low severity, minimal severity, or no severity; and (ii) create a false basis for the other Fraudulent Services that Defendants purported to provide the Insureds.

**b.      Misrepresentations Regarding the Amount of Time Spent on the Initial Examinations**

123.    What is more, in the claims for initial examinations that are identified in Exhibits "1" - "3", Simpson Chiropractic, Urgent Care Chiropractic, Simpson, Rizvi, and Wellness Works routinely misrepresented and exaggerated the amount of face-to-face time that the examining physician spent with the Insureds or the Insureds' families.

124.    Pursuant to the CPT Assistant, the use of CPT code 99203 CPT to bill for an initial examination represented that the health care practitioner who performed the examination spent at least 30 minutes time performing the examination, the use of CPT code 99204 to bill for an initial examination represented that the health care practitioner who performed the examination spent at least 45 minutes of time performing the examination, and the use of CPT code 99205 to bill for an initial examination represented that the health care practitioner who performed the examination spent at least 60 minutes of time performing the examination.

125.    As set forth in Exhibits "1" and "2", Simpson Chiropractic, Urgent Care Chiropractic and Simpson virtually always billed for their putative initial examinations using CPT code 99203, and thereby represented that the health care practitioners who purported to conduct the examinations spent at least 30 minutes of time performing the examinations.

126.    As set forth in Exhibit "3", Wellness Works and Rizvi – at Simpson's direction – virtually always billed for their putative initial examinations using CPT codes 99204 and 99205 and thereby represented that the health care practitioners who purported to conduct the examinations spent between 45 to 60 minutes of time performing the examinations.

127.    In fact, in the claims for initial examinations identified in Exhibits "1" - "3", neither Simpson, Rizvi, nor any of the health care practitioners associated with Simpson Chiropractic,

Urgent Care Chiropractic, or Wellness Works ever spent more than 15 minutes – let alone 30, 45, or 60 minutes – of time performing the purported examinations.

128.     For instance, and in keeping with the fact that the initial examinations in the claims identified in Exhibits "1" - "3" did not entail more than 15 minutes of time to perform, the treating health care practitioners who purported to perform the examinations Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works used templates in purporting to conduct the initial examinations.

129.     The templates that the health care practitioners used in purporting to conduct the initial examinations set forth a limited range of examination parameters.

130.     The only time spent performing the examinations that was reflected in the limited range of examination parameters consisted of brief patient interviews and limited examinations of the Insureds' musculoskeletal systems.

131.     These brief patient interviews and limited examinations did not require any of the health care practitioners associated with Simpson Chiropractic, Urgent Care Chiropractic, or Wellness Works to spend more than 15 minutes of time performing the purported examinations, to the extent that they were performed in the first place.

132.     In the claims for initial examinations that are identified in Exhibits "1" - "3", the Defendants falsely represented that the examinations involved between 30 to 60 minutes of time to perform in order to create a false basis for their charges under CPT codes 99203, 99204, and 99205, because examinations billable under CPT codes 99203, 99204, and 99205 are reimbursable at a higher rate than examinations that require less time to perform.

**c.      Misrepresentations Regarding the Extent of Decision-Making**

133.     Moreover, in the claims for initial examinations identified in Exhibits "1" - "3", when Simpson Chiropractic, Urgent Care Chiropractic, Simpson, Rizvi, and Wellness Works

billed GEICO for putative initial examinations, they made the following misrepresentations regarding the extent of medical decision-making that was required in connection with the examinations:

(i)     When billing GEICO for putative initial examinations using CPT code 99203 in the claims identified in Exhibits "1" and "2", Simpson Chiropractic, Urgent Care Chiropractic, and Simpson falsely represented that the health care providers who purported to conduct the examinations engaged in some legitimate, low complexity medical decision-making in connection with the examinations.

(ii)    When billing GEICO for putative initial examinations using CPT code 99204 in the claims identified in Exhibit "3", Wellness Works and Rizvi – at Simpson's direction – falsely represented that the physicians or health care providers who purported to conduct the examinations engaged in some legitimate, moderate complexity medical decision-making in connection with the examinations.

(iii)   When billing GEICO for putative initial examinations using CPT code 99205 in the claims identified in Exhibit "3", Wellness Works and Rizvi – at Simpson's direction – falsely represented that the physicians or health care providers who purported to conduct the examinations engaged in some legitimate, high complexity medical decision-making in connection with the examinations.

134.    In actuality, the purported initial examinations did not involve any legitimate medical decision-making at all.

135.    For example, in the claims for initial examinations identified in Exhibits "1" - "3": (i) the initial examinations did not involve the retrieval, review, or analysis of any meaningful amount of medical records, diagnostic tests, or other information; (ii) there was no risk of significant complications or morbidity – much less mortality – from the Insureds' minor soft-tissue injury complaints, to the extent that they ever had any complaints arising from automobile accidents at all; and (iii) Simpson Chiropractic, Urgent Care Chiropractic, Simpson, Rizvi, and Wellness Works did not consider any significant number of diagnoses or treatment options for Insureds during the initial examinations, and instead provided a substantially similar, pre-determined sprain/strain or similar soft tissue injury "diagnoses" for every Insured, and in the case

of Rizvi and Wellness Works a false "emergency medical condition" diagnosis, regardless of the

Insureds' true individual circumstances or presentation.

136.    For example:

(i)     On December 4, 2020, an Insured named JM was involved in an automobile accident. The contemporaneous police report indicated that there was no damage at all to Jason Miller's vehicle and that Jason Miller's vehicle was drivable following the accident.  The police report further indicated that JM was not injured and did not complain of any pain at the scene. In keeping with the fact that JM was not seriously injured, JM did not visit any hospital emergency room following the accident. The extent that JM experienced any health problems at all as the result of the accident, they were of low or minimal severity. On December 9, 2020, a chiropractor named Jeffrey Burdige ("Burdige") purported to conduct an initial examination of JM at Urgent Care, at Simpson's direction. To the extent that Burdige performed the examination in the first instance, Burdige and Urgent Care Chiropractic did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Burdige and Urgent Care Chiropractic did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Burdige and Urgent Care Chiropractic – at Simpson's direction – provided the Insured with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that they provided to virtually every other Insured. Furthermore, neither the Insured's presenting problems, nor the treatment plan provided to the Insured by Burdige and Urgent Care Chiropractic presented any risk of significant complications, morbidity, or mortality. To the contrary, the Insured did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Burdige and Urgent Care consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to the Insured. Even so, Urgent Care Chiropractic and Simpson billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Burdige engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ii)    On July 5, 2021, an Insured named WT was involved in an automobile accident. The contemporaneous police report indicated that WT was not injured and did not complain of any pain at the scene. In keeping with the fact that WT was not seriously injured, JM did not visit any hospital emergency room following the accident. The extent that WT experienced any health problems at all as the result of the accident, they were of low or minimal severity. On August 5, 2021, an advanced practice registered nurse named Skylar Just ("Just") purported to conduct an initial examination of WT at Wellness Works, at Simpson and Rizvi's direction. To the extent that Just performed the examination in the first instance, Just and Wellness Works did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Just and Wellness Works did not consider any significant number of diagnoses or management options in connection with the examination.

Instead, Just and Wellness Works – at Rizvi and Simpson's direction – provided the Insured with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that they provided to virtually every other Insured – together with a determination that the Insured purportedly suffered from an "Emergency Medical Condition". Furthermore, neither the Insured's presenting problems, nor the treatment plan provided to the Insured by Just and Wellness Works presented any risk of significant complications, morbidity, or mortality. To the contrary, the Insured did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Just and Wellness Works consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to the Insured. Even so, Wellness Works, Just, Rizvi, and Simpson billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Just engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(iii)    On January 29, 2022, an Insured named TY was involved in an automobile accident. The contemporaneous police report indicated that TY was not injured and did not complain of any pain at the scene. In keeping with the fact that TY was not seriously injured, TY did not visit any hospital emergency room following the accident. The extent that TY experienced any health problems at all as the result of the accident, they were of low or minimal severity. On February 4, 2022, Simpson purported to conduct an initial examination of TY at Simpson Chiropractic. To the extent that Simpson performed the examination in the first instance, Simpson Chiropractic and Simpson did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Simpson Chiropractic and Simpson did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Simpson Chiropractic and Simpson provided the Insured with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that they provided to virtually every other Insured. Furthermore, neither the Insured's presenting problems, nor the treatment plan provided to the Insured by Simpson Chiropractic and Simpson presented any risk of significant complications, morbidity, or mortality. To the contrary, the Insured did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simpson Chiropractic and Simpson consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to the Insured. Even so, Simpson Chiropractic and Simpson billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Simpson engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iv)    On January 29, 2022, an Insured named MY was involved in an automobile accident. The contemporaneous police report indicated that MY was not injured and did not complain of any pain at the scene. In keeping with the fact that MY was not seriously injured, MY did not visit any hospital emergency room following the accident. The extent that MY experienced any health problems at all as the result of the accident, they were of low or minimal severity. On February 9, 2022, Rizvi purported to conduct an initial examination of MY at Wellness Works. To the

extent that Simpson performed the examination in the first instance, Wellness Works and Rizvi did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Wellness Works and Rizvi did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Wellness Works and Rizvi provided the Insured with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that they provided to virtually every other Insured – together with a determination that the Insured purportedly suffered from an "Emergency Medical Condition". Furthermore, neither the Insured's presenting problems, nor the treatment plan provided to the Insured by Wellness Works and Rizvi presented any risk of significant complications, morbidity, or mortality. To the contrary, the Insured did not need any significant treatment at all as a result of the accident, and the treatment plan recommended by Wellness Works and Rizvi consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to the Insured. Even so, Wellness Works and Rizvi – at Simpson's direction – billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Rizvi engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(v)     On October 1, 2022, an Insured named WN was involved in an automobile accident. The contemporaneous police report indicated WN's vehicle was drivable following the accident. The police report further indicated that WM was not injured in the accident and did not complain of any pain at the scene. In keeping with the fact that WM was not seriously injured, WM did not visit any hospital emergency room following the accident. To the extent that WM experienced any health problems at all as the result of the accident, they were of low or minimal severity. On October 3, 2022, Rizvi purported to conduct an initial examination of WN at Wellness Works. To the extent that Rizvi performed the examination in the first instance, Rizvi and Wellness Works did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Rizvi and Wellness Works did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Rizvi, and Wellness Works provided the Insured with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that they provided to virtually every other Insured – together with a determination that the Insured purportedly suffered from an "Emergency Medical Condition". Furthermore, neither the Insured's presenting problems, nor the treatment plan provided to the Insured by Rizvi, and Wellness Works presented any risk of significant complications, morbidity, or mortality. To the contrary, the Insured did not need any significant treatment at all as a result of the accident, and the treatment plan recommended by Wellness Works and Rizvi consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to the Insured. Even so, Wellness Works and Rizvi – at Simpson's direction – billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Rizvi engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

137.    These are only representative examples. In the claims identified in Exhibits "1" – "3", Defendants routinely falsely represented that the purported examinations involved legitimate low, moderate, or high-complexity decision-making, when in fact they did not involve any legitimate medical decision-making at all.

138.    In keeping with the fact that these putative "diagnoses" were pre-determined and false, Defendants frequently issued substantially identical, false "diagnoses", on or about the same date, to two or more Insureds who had been involved in the same underlying accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds, despite the fact that they were differently situated.

139.    For example:

(i)    On March 8, 2022, two Insureds – JC and AP – were involved in the same automobile accident. Thereafter, both Insureds presented to Simpson Chiropractic for initial examinations by Simpson on the exact same date, March 9, 2022. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Simpson Chiropractic and Simpson provided the Insureds with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(ii)    On April 11, 2022, two Insureds – EB and KE – were involved in the same automobile accident. Thereafter, both Insureds presented to Urgent Care Chiropractic for initial examinations on the exact same date, April 18, 2022. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Urgent Care Chiropractic and Simpson caused the Insureds to be provided with substantially similar, false soft tissue injury "diagnoses", and caused a substantially similar course of medically unnecessary treatment to be recommended to both of them.

(iii)    On June 6, 2022, two Insureds – DL and JL – were involved in the same automobile accident. Thereafter, both Insureds presented to Simpson Chiropractic for initial examinations by Simpson on the exact same date, June 8, 2022. These Insureds

were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Simpson Chiropractic and Simpson provided the Insureds with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(iv)     On October 1, 2022, two Insureds – WN and EH – were involved in the same automobile accident. Thereafter, both Insureds presented to Wellness Works for initial examinations by Rizvi on the exact same date, October 3, 2022. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Rizvi and Wellness Works – at Simpson's direction – provided the Insureds with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(v)     On December 22, 2022, two Insureds – CH and HI – were involved in the same automobile accident. Thereafter, both Insureds presented to Simpson Chiropractic for initial examinations by Simpson on the exact same date, December 28, 2022. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Simpson Chiropractic and Simpson provided the Insureds with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(vi)     On December 4, 2022 two Insureds – VM and CB – were involved in the same automobile accident. Thereafter, both Insureds presented to Urgent Care Chiropractic for initial examinations on the exact same date, December 5, 2022. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Urgent Care Chiropractic and Simpson caused the Insureds to be provided with substantially similar, false soft tissue injury "diagnoses", and caused a substantially similar course of medically unnecessary treatment to be recommended to both of them.

(vii)     On January 18, 2023, two Insureds – CR and CP – were involved in the same

automobile accident. Thereafter, both Insureds presented to Urgent Care Chiropractic for initial examinations on the exact same date, January 27, 2023. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Urgent Care Chiropractic and Simpson caused the Insureds to be provided with substantially similar, false soft tissue injury "diagnoses", and caused a substantially similar course of medically unnecessary treatment to be recommended to both of them.

(viii)   On March 17, 2023, two Insureds – LM and ZM – were involved in the same automobile accident. Thereafter, both Insureds presented to Simpson Chiropractic for initial examinations by Simpson on the exact same date, March 22, 2023. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Simpson Chiropractic and Simpson provided the Insureds with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(ix)   On May 12, 2023, two Insureds – RC and JM – were involved in the same automobile accident. Thereafter, both Insureds presented to Simpson Chiropractic for initial examinations by Simpson on the exact same date, May 16, 2023. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Simpson Chiropractic and Simpson provided the Insureds with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(x)   On May 15, 2023, two Insureds – JH and AN – were involved in the same automobile accident. Thereafter, both Insureds presented to Urgent Care Chiropractic for initial examinations on the exact same date, June 2, 2023. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Urgent Care Chiropractic and Simpson caused the Insureds to be provided with substantially similar, false soft tissue injury "diagnoses", and caused a substantially similar course of medically unnecessary treatment to be recommended to both of them.

(xi)    On October 29, 2023, two Insureds – JM and AC – were involved in the same automobile accident. Thereafter, both Insureds presented to Wellness Works for initial examinations by Rizvi on the exact same date, November 10, 2023. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Rizvi and Wellness Works – at Simpson's direction – provided the Insureds with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xii)    On November 15, 2023, two Insureds – SS and RC – were involved in the same automobile accident. Thereafter, both Insureds presented to Wellness Works for initial examinations by Rizvi on the exact same date, December 11, 2023. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Rizvi and Wellness Works – at Simpson's direction – provided the Insureds with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xiii)    On June 23, 2024, <u>three</u> Insureds – AC, NW, and VW – were involved in the same automobile accident. Thereafter, both Insureds presented to Wellness Works for initial examinations on the exact same date, June 28, 2024. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the initial examinations Rizvi and Wellness Works – at Simpson's direction – provided the Insureds with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all three of them.

(xiv)    On July 18, 2024, two Insureds – AE and CE– were involved in the same automobile accident. Thereafter, both Insureds presented to Simpson Chiropractic for initial examinations on the exact same date, July 19, 2024. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the initial

41

examinations, Simpson Chiropractic and Simpson provided the Insureds with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xv)    On August 29, 2024, two Insureds – HB and BH – were involved in the same automobile accident. Thereafter, both insureds presented to Simpson Chiropractic for initial examinations by Simpson on the exact same date, September 6, 2024. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. Even so, at the conclusion of each of the examinations, Simpson Chiropractic and Simpson provided the Insureds with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

140.    These are only representative examples. In the claims for initial examinations that are identified in Exhibits "1" - "3", Simpson Chiropractic, Urgent Care, Simpson, Wellness Works, and Rizvi frequently issued substantially identical "diagnoses", on or about the same date, to more than one Insured involved in a single accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds, despite the fact that the Insureds were differently situated and, in any case, did not require the treatment.

141.    Simpson Chiropractic, Urgent Care, Simpson, Wellness Works, and Rizvi routinely inserted these false "diagnoses" in their initial examination reports in order to create the false impression that the initial examinations required some legitimate medical decision-making, and in order to create a false justification for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

142.    In the claims for initial examinations identified in Exhibits "1" - "3", Simpson Chiropractic, Urgent Care, Simpson, Wellness Works, and Rizvi routinely fraudulently misrepresented that the examinations were lawfully provided and eligible for PIP reimbursement, when in fact they were neither lawfully provided nor reimbursable, because:

(i)    the putative examinations were illusory, with outcomes that were pre-determined to result in substantially identical, phony "diagnoses" and treatment

recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)     the charges for the putative examinations misrepresented the nature, extent, and results of the examinations; and

(iii)    Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they were operated in violation of Florida law.

143.    In this context, Simpson – who at all relevant times purported to own Simpson Chiropractic and Urgent Care Chiropractic – did not, and could not have, legitimately supervised the business activities of Simpson Chiropractic and Urgent Care Chiropractic.

144.    Had Simpson actually supervised the business activities of Simpson Chiropractic and Urgent Care Chiropractic, he would have noted – among other things – that Simpson Chiropractic and Urgent Care Chiropractic's billing routinely fraudulently misrepresented that the putative initial examinations were legitimately and lawfully performed.

145.    Simpson failed to do so, because he never actually supervised the business activities of Simpson Chiropractic and Urgent Care Chiropractic.

146.    Similarly, in this context, Rizvi – who at all relevant times purported to own Wellness Works – did not, and could not have, legitimately supervised the business activities of Wellness Works.

147.    Had Rizvi actually supervised the business activities of Wellness Works, she would have noted – among other things – that Wellness Works' billing routinely fraudulently misrepresented that the putative initial examinations were legitimately and lawfully performed.

148.    Rizvi failed to do so, because she never actually supervised the business activities of Wellness Works.

**G.      The Fraudulent "Emergency Medical Condition" Diagnoses at Wellness Works**

149.     Moreover, in keeping with the fact that Defendants routinely inserted false "diagnoses" in their initial examination reports in order to create the false impression that the examinations required some legitimate medical decision-making, Wellness Works, Rizvi, and various other health care providers associated with Wellness Works – at Simpson's direction – virtually always appended a false "Emergency Medical Condition" determination to their examination reports. This, despite the fact that the Insureds were not, and could not have been, legitimately suffering from any emergency medical conditions as the result of their minor accidents.

150.     Wellness Works, Rizvi, Simpson, and the health care providers working at their direction routinely caused these false "diagnoses" to be included in their examination reports in order to create the false impression that the examinations required some legitimate medical decision-making, to create a false justification for the other Fraudulent Services that the Defendants purported to provide to the Insureds, and to increase the Insureds' PIP reimbursement limits for health care services from $2,500.00 to $10,000.00, thereby enabling the Defendants to submit the maximum amount of fraudulent and unlawful PIP charges per Insured. See Fla. Stat. § 627.736.

151.     However, to the extent that the Insureds in the claims identified in Exhibits "1" – "3" ever had any genuine medical problems at all as the result of their minor automobile accidents, the problems virtually always were limited to minimally-severe sprains or strains of the back, neck, or extremities, which did not legitimately constitute any kind of "emergency medical conditions".

152.     For example:

(i)      On August 2, 2021, an Insured named BN was involved in an automobile accident. The contemporaneous police report indicated BN  was not injured in the accident and did not complain of any pain at the scene. In keeping with the fact that BN  was not seriously injured, BN  did not visit any hospital emergency room following the accident. To the extent that BN experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, improved over

time, and did not legitimately constitute any kind of "emergency medical condition". Even so, following a purported initial examination of BN at Wellness Works on August 13, 2021, Rizvi – at Simpson's direction – caused BN to be falsely diagnosed with an "emergency medical condition."

(ii)     On July 5, 2021, an Insured named WT was involved in an automobile accident. The contemporaneous police report indicated WT was not injured in the accident and did not complain of any pain at the scene. In keeping with the fact that WT was not seriously injured, WT did not visit any hospital emergency room following the accident. To the extent that WT experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, improved over time, and did not legitimately constitute any kind of "emergency medical condition". Even so, following a purported initial examination of WT at Wellness Works on August 5, 2021, Rizvi – at Simpson's direction – caused WT to be falsely diagnosed with an "emergency medical condition."

(iii)    On January 29, 2022, an Insured named MY was involved in an automobile accident. The contemporaneous police report indicated MY was not injured in the accident and did not complain of any pain at the scene. In keeping with the fact that MY was not seriously injured, MY did not visit any hospital emergency room following the accident. To the extent that MY experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, improved over time, and did not legitimately constitute any kind of "emergency medical condition". Even so, following a purported initial examination of MY at Wellness Works on February 9, 2022, Rizvi – at Simpson's direction – falsely reported that MY's injuries constituted an "emergency medical condition."

(iv)    On June 1, 2022, an Insured named MP was involved in an automobile accident. The contemporaneous police report indicated MP was not injured in the accident and did not complain of any pain at the scene. In keeping with the fact that MP was not seriously injured, MP did not visit any hospital emergency room following the accident. To the extent that MP experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, improved over time, and did not legitimately constitute any kind of "emergency medical condition". Even so, following a purported initial examination of MP at Wellness Works on June 8, 2022, Rizvi – at Simpson's direction – falsely reported that MP's injuries constituted an "emergency medical condition."

(v)     On October 1, 2022, an Insured named EH was involved in an automobile accident. The contemporaneous police report indicated EH was not injured in the accident and did not complain of any pain at the scene. In keeping with the fact that EH was not seriously injured, EH did not visit any hospital emergency room following the accident. To the extent that EH experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, improved over time, and did not legitimately constitute any kind of "emergency medical condition". Even so, following a purported initial examination of EH at Wellness Works on October 3, 2022, Rizvi – at Simpson's direction – falsely reported that EH's injuries constituted an "emergency medical condition."

(vi)     On October 1, 2022, an Insured named WN was involved in an automobile accident. The contemporaneous police report indicated WN was not injured in the accident and did not complain of any pain at the scene. In keeping with the fact that WN was not seriously injured, WN did not visit any hospital emergency room following the accident. To the extent that WN experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, improved over time, and did not legitimately constitute any kind of "emergency medical condition". Even so, following a purported initial examination of WN at Wellness Works on October 3, 2022, Rizvi – at Simpson's direction – falsely reported that WN's injuries constituted an "emergency medical condition."

(vii)    On October 1, 2022, an Insured named AM was involved in an automobile accident. The contemporaneous police report indicated AM was not injured in the accident and did not complain of any pain at the scene. In keeping with the fact that AM was not seriously injured, AM did not visit any hospital emergency room following the accident. To the extent that AM experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, improved over time, and did not legitimately constitute any kind of "emergency medical condition". Even so, following a purported initial examination of AM at Wellness Works on October 6, 2022, Rizvi – at Simpson's direction – falsely reported that AM's injuries constituted an "emergency medical condition."

(viii)   On August 22, 2023, an Insured named JC was involved in an automobile accident. The contemporaneous police report indicated JC was not injured in the accident and did not complain of any pain at the scene. In keeping with the fact that JC was not seriously injured, JC did not visit any hospital emergency room following the accident. To the extent that JC experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, improved over time, and did not legitimately constitute any kind of "emergency medical condition". Even so, following a purported initial examination of JC at Wellness Works on August 25, 2023, Rizvi – at Simpson's direction – falsely reported that JC's injuries constituted an "emergency medical condition."

(ix)     On January 6, 2024, an Insured named JD was involved in an automobile accident. The contemporaneous police report indicated JD was not injured in the accident and did not complain of any pain at the scene. In keeping with the fact that JD was not seriously injured, JD did not visit any hospital emergency room following the accident. To the extent that JD experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, improved over time, and did not legitimately constitute any kind of "emergency medical condition". Even so, following a purported initial examination of JD at Wellness Works on February 2, 2024, Rizvi – at Simpson's direction – falsely reported that JD's injuries constituted an "emergency medical condition."

(x)      On February 8, 2024, an Insured named VE was involved in an automobile accident. The contemporaneous police report indicated VE was not injured in the accident and did not complain of any pain at the scene. In keeping with the fact that

VE was not seriously injured, VE did not visit any hospital emergency room following the accident. To the extent that VE experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, improved over time, and did not legitimately constitute any kind of "emergency medical condition". Even so, following a purported initial examination of VE at Wellness Works by Rizvi on February 8, 2024, Rizvi – at Simpson direction – falsely reported that VE's injuries constituted an "emergency medical condition."

153.    These are only representative examples. In the claims for examinations that are identified in Exhibit "3", Wellness Works, Rizvi, and various other health care providers associated with Wellness Works – acting at Rizvi and Simpson's direction – virtually always falsely diagnosed patients with an "emergency medical condition" so as to increase the amount of fraudulent and unlawful PIP billing that the Defendants could submit to GEICO and other insurers.

## H.    The Fraudulent Charges for Chiropractic and Physical Therapy Services at Simpson Chiropractic and Urgent Care Chiropractic

154.    In addition to their fraudulent initial examination, Simpson Chiropractic, Urgent Care Chiropractic, Simpson, and other health care practitioners working at their direction virtually always purported to subject each of the Insureds in the claims identified in Exhibits "1" – "2" to months of medically unnecessary physical therapy and chiropractic.

155.    In the claims identified in Exhibits "1" and "2", Simpson Chiropractic, Urgent Care Chiropractic, and Simpsons typically billed the purported chiropractic/physical therapy services to GEICO under CPT codes 97010, 97039, 97112, 98941, 98943, and Health Care Common Procedure Coding System ("HCCPCS") code G0283.

156.    Like Defendants' charges for the other Fraudulent Services, the charges for the purported physical therapy and chiropractic services were fraudulent in that they misrepresented Simpson Chiropractic and Urgent Care Chiropractic's eligibility to collect PIP Benefits in the first instance.

157.     In fact, and as set forth herein, Simpson Chiropractic and Urgent Care Chiropractic never were eligible to collect PIP Benefits, inasmuch as they were operated in violation of Florida law.

158.     The charges for the physical therapy and chiropractic services also were fraudulent in that they misrepresented the nature and medical necessity of the services.

159.     In a legitimate clinical setting, each individual patient's physical therapy and/or chiropractic treatment schedule, and the specific treatment modalities that will be used, must be tailored to the specific patient's circumstances, symptomatology, and presentation.

160.     In a legitimate clinical setting, the nature of, extent of, and schedule for physical therapy is constantly adjusted for each individual patient based on each patient's treatment progress, as assessed during each patient's follow-up examinations and on an ongoing basis as they receive the physical therapy or chiropractic treatment.

161.     In keeping with the fact that the purported physical therapy and chiropractic services that were billed through Simpson Chiropractic and Urgent Care Chiropractic to GEICO were not medically necessary, Defendants did not tailor the chiropractic and physical therapy services they purported to provide to each Insured's individual circumstances and presentation.

162.     There are a large number of individual types of physical therapy and chiropractic services that potentially can be provided to a patient, depending on the patient's individual symptomatology and needs.

163.     However, Simpson Chiropractic, Urgent Care Chiropractic, Simpson, and other health care practitioners working at their direction routinely purported to provide the same handful of chiropractic and physical therapy "treatments" to the Insureds in the claims identified in Exhibits "1" – "2", on substantially the same schedule, without regard for the Insureds' individual circumstances.

164.     Moreover, and in keeping with the fact that Defendants purported to provide these physical therapy and chiropractic services pursuant to pre-determined fraudulent protocols, Simpson Chiropractic, Urgent Care Chiropractic, Simpson, and other health care practitioners working at their direction routinely purported to begin performing these services prior to the Insured having first tried a more conservative course of rest, ice, compression, and – if applicable – elevation of the affected body part.

165.     In legitimate clinical setting, when a patient presents with a soft tissue injury such as a sprain or strain arising from an automobile accident, the initial standard of care is conservative treatment comprised of rest, ice, compression, and – if applicable – elevation of the affected body part.

166.     It generally is inappropriate to begin administering physical therapy and chiropractic to a patient with a soft tissue injury in the immediate aftermath of the injury, before the patient has first tried a more conservative course of rest, compression, and – if applicable – elevation of the affected body part.

167.     Even so, in the claims identified in Exhibits "1" – "2", Simpson Chiropractic, Urgent Care Chiropractic, Simpson, and other health care practitioners working at their direction routinely directed Insureds to immediately begin a course of physical therapy and chiropractic often within a few days of their accident, before the Insureds had first tried a more conservative course of rest, compression, and – if applicable – elevation of the affected body part.

168.     Defendants routinely directed Insureds to immediately begin a course of physical therapy and chiropractic often within days of their accidents, because it was predetermined that they would provide their putative physical therapy and chiropractic services to any Insured who presented to them, regardless of medical necessity.

I.      **The Violations of the Chiropractor Advertising Laws**

169.    As set forth above the Chiropractor Advertising Laws prohibit chiropractors from – among other things – disseminating or causing the dissemination of any advertisement or advertising which represents that the chiropractor holds a license superior to a chiropractic license or contains a reference to a degree not held by the chiropractor, such as "M.D." or "D.O".

170.    Simpson Chiropractic, Urgent Care Chiropractic, and Simpson violated the Chiropractor Advertising Laws by causing the dissemination of advertising that contained references to degrees not held by Simpson.

171.    As set forth above, Simpson purported to own, control, and operate Simpson Chiropractic and Urgent Care Chiropractic.

172.    Simpson Chiropractic and Urgent Care Chiropractic were used by Simpson as a means through which Simpson could disseminate or cause to be disseminated advertisements which violated the Chiropractor Advertising Laws.

173.    For example, Simpson Chiropractic and Urgent Chiropractic's website, SimpsonMedical.com, represents that in addition to providing chiropractic services, they also provides "medical services" that were outside the scope of Simpson's chiropractic license, including trigger point injections.

174.    Similarly, Simpson Chiropractic and Urgent Care Chiropractic's website does not refer to Simpson Chiropractic and Urgent Care Chiropractic under their legal names, but rather refers to Simpson Chiropractic and Urgent Care Chiropractic as "Simpson Advanced Chiropractic & *Medical Center*.

175.    In the claims identified above, Simpson Chiropractic, Urgent Care Chiropractic, and Simpson routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable

because they were provided – to the extent that they were provided at all – pursuant to the Defendants' violation of the Chiropractor Advertising Laws.

## III.   The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO

176.    To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted thousands of bills and treatment reports through Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works to GEICO, containing thousands of individual charges, seeking payment for the Fraudulent Services for which the Defendants were not entitled to receive payment.

177.    The claims that the Defendants submitted or caused to be submitted to GEICO were false and misleading in the following, material respects:

(i)     The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works were in compliance with Florida law and therefore were eligible to collect PIP Benefits in the first instance. In fact, Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works were never eligible for collect PIP Benefits in the first instance because they operated in pervasive violation of Florida law.

(ii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement. In fact, the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement.

(iii)   The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services frequently were not performed at all and, to the extent that they were performed, they were not medically necessary and were performed as part of a pre-determined fraudulent treatment and billing protocol designed solely to financially enrich the Defendants, not to benefit the Insureds who supposedly were subjected to them.

(iv)    The HCFA-1500 forms reports submitted by and on behalf of the Defendants frequently misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided.

51

IV.     **The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance**

178.    The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO.

179.    Even so, the Defendants knowingly misrepresented and concealed facts related to Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works in an effort to prevent discovery that the Defendants operated in pervasive violation of Florida law, and to prevent discovery that the Fraudulent Services were medically unnecessary and, in many cases, illusory.

180.    For example, the billing and treatment reports submitted through Simpson Chiropractic, Urgent Care Chiropractic, and Wellness Works falsely represented that the underlying services had been legitimately and lawfully performed, and did not disclose the Defendants' unlawful activities as set forth herein.

181.    GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $1,100,000.00.

182.    GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it commenced this action.

**FIRST CAUSE OF ACTION**
**Against Simpson Chiropractic**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

183.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

184.    There is an actual case in controversy between GEICO and Simpson Chiropractic regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

185.    Simpson Chiropractic has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of Florida law.

186.    Simpson Chiropractic has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

187.    Simpson Chiropractic has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

188.    Simpson Chiropractic has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

189.    Simpson Chiropractic has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

190.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Simpson Chiropractic has no right to receive payment for any pending bills submitted to GEICO.

**SECOND CAUSE OF ACTION**
**Against Simpson**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

191.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

192.    Simpson Chiropractic is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

193.    Simpson  knowingly has conducted and/or participated, directly or indirectly, in the conduct of Simpson Chiropractic's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Simpson Chiropractic was not eligible to receive under the No-Fault Law because: (i) Simpson Chiropractic unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance;  and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

194.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

54

195.     Simpson Chiropractic's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Simpson operated Simpson Chiropractic, inasmuch as Simpson Chiropractic was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Simpson Chiropractic to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Simpson Chiropractic to the present day.

196.     Simpson Chiropractic is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Simpson Chiropractic in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

197.     GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $615,000.00 pursuant to the fraudulent bills submitted through Simpson Chiropractic.

198.     By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964, and any other relief the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Against Simpson, Wellness Works, and Rizvi**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

199.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

200.     Simpson Chiropractic is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

201.    Simpson, Wellness Works, and Rizvi are employed by or associated with the Simpson Chiropractic enterprise.

202.    Simpson, Wellness Works, and Rizvi knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Simpson Chiropractic's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Simpson Chiropractic was not eligible to receive under the No-Fault Law because: (i) Simpson Chiropractic unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance;  and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

203.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

204.    Simpson, Wellness Works, and Rizvi knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

56

205.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $615,000.00 pursuant to the fraudulent bills submitted through the Simpson Chiropractic enterprise.

206.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Against Simpson Chiropractic and Simpson**
**(Under Fla. Stat. 501.201 et. seq.)**

207.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-182 above.

208.    Simpson Chiropractic and Simpson are actively engaged in trade and commerce in the State of Florida.

209.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

210.    Simpson Chiropractic and Simpson engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

211.    The bills and supporting documents submitted by Simpson Chiropractic and Simpson  to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Simpson Chiropractic's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

212.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Simpson Chiropractic and Simpson has been materially injurious to GEICO and its Insureds.

213.     The conduct of Simpson Chiropractic and Simpson was the actual and proximate cause of the damages sustained by GEICO.

214.     Simpson Chiropractic and Simpson's unfair and deceptive acts have caused GEICO to sustain damages of at least $615,000.00.

215.     By reason of Simpson Chiropractic and Simpson's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**FIFTH CAUSE OF ACTION**
**Against Simpson Chiropractic and Simpson**
**(Common Law Fraud)**

216.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

217.     Simpson Chiropractic and Simpson intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Simpson Chiropractic for the Fraudulent Services.

218.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Simpson Chiropractic was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact Simpson Chiropractic never was in compliance with Florida Law, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the

58

representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

219.    Simpson Chiropractic and Simpson intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Simpson Chiropractic that were not reimbursable.

220.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $615,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Simpson Chiropractic and Simpson through Simpson Chiropractic.

221.    Simpson Chiropractic and Simpson's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

222.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**Against Simpson Chiropractic and Simpson**
**(Unjust Enrichment)**

223.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-182 above.

224.    As set forth above, Simpson Chiropractic and Simpson have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

225.    When GEICO paid the bills and charges submitted or caused to be submitted by Simpson Chiropractic and Simpson through Simpson Chiropractic, it reasonably believed that it was legally obligated to make such payments based on Simpson Chiropractic and Simpson's improper, unlawful, and/or unjust acts.

226.    Simpson Chiropractic and Simpson have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Simpson Chiropractic and Simpson voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

227.    Simpson Chiropractic and Simpson's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

228.    By reason of the above, Simpson Chiropractic and Simpson have been unjustly enriched in an amount to be determined at trial, but in no event less than $615,000.00.

**SEVENTH CAUSE OF ACTION**
**Against Urgent Care Chiropractic**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

229.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

230.    There is an actual case in controversy between GEICO and Urgent Care Chiropractic regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

231.    Urgent Care Chiropractic has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of Florida law.

232.    Urgent Care Chiropractic has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

233.   Urgent Care Chiropractic has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

234.   Urgent Care Chiropractic has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

235.   Urgent Care Chiropractic has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

236.   Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Urgent Care Chiropractic has no right to receive payment for any pending bills submitted to GEICO.

## EIGHTH CAUSE OF ACTION
### Against Simpson
### (Violation of RICO, 18 U.S.C. § 1962(c))

237.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

238.   Urgent Care Chiropractic is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

239.   Simpson knowingly has conducted and/or participated, directly or indirectly, in the conduct of Urgent Care Chiropractic's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of

the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Urgent Care Chiropractic was not eligible to receive under the No-Fault Law because: (i) Urgent Care Chiropractic unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance;  and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

240.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2".

241.    Urgent Care Chiropractic's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Simpson operated Urgent Care Chiropractic, inasmuch as Urgent Care Chiropractic was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Urgent Care Chiropractic to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Urgent Care Chiropractic to the present day.

242.    Urgent Care Chiropractic is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other

insurers. These inherently unlawful acts are taken by Urgent Care Chiropractic in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

243.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $420,000.00 pursuant to the fraudulent bills submitted through Urgent Care Chiropractic.

244.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964, and any other relief the Court deems just and proper.

**NINTH CAUSE OF ACTION**
**Against Simpson, Wellness Works, and Rizvi**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

245.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

246.    Urgent Care Chiropractic is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

247.    Simpson, Wellness Works, and Rizvi are employed by or associated with the Urgent Care Chiropractic enterprise.

248.    Simpson, Wellness Works, and Rizvi knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Urgent Care Chiropractic's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Urgent Care Chiropractic was not eligible to receive under the No-Fault Law because: (i) Urgent Care Chiropractic unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the

underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

249.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

250.    Simpson, Wellness Works, and Rizvi knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

251.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $420,000.00 pursuant to the fraudulent bills submitted through the Urgent Care Chiropractic enterprise.

252.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TENTH CAUSE OF ACTION
### Against Urgent Care Chiropractic and Simpson
### (Under Fla. Stat. 501.201 et. seq.)

253.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-182 above.

254.     Urgent Care Chiropractic and Simpson are actively engaged in trade and commerce in the State of Florida.

255.     GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

256.     Urgent Care Chiropractic and Simpson engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

257.     The bills and supporting documents submitted by Urgent Care Chiropractic and Simpson  to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Urgent Care Chiropractic's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

258.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Urgent Care Chiropractic and Simpson has been materially injurious to GEICO and its Insureds.

259.     The conduct of Urgent Care Chiropractic and Simpson was the actual and proximate cause of the damages sustained by GEICO.

260.     Urgent Care Chiropractic and Simpson's unfair and deceptive acts have caused GEICO to sustain damages of at least $420,000.00.

261.     By reason of Urgent Care Chiropractic and Simpson's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

## ELEVENTH CAUSE OF ACTION
### Against Urgent Care Chiropractic and Simpson
### (Common Law Fraud)

262.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

263.     Urgent Care Chiropractic and Simpson intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Urgent Care Chiropractic for the Fraudulent Services.

264.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Urgent Care Chiropractic was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact Urgent Care Chiropractic never was in compliance with Florida Law, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and  (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

265.     Urgent Care Chiropractic and Simpson intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Urgent Care Chiropractic that were not reimbursable.

266.     GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $420,000.00 pursuant to the

fraudulent bills that were submitted or caused to be submitted by the Urgent Care Chiropractic and Simpson through Urgent Care Chiropractic.

267.    Urgent Care Chiropractic and Simpson's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

268.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TWELFTH CAUSE OF ACTION**
**Against Urgent Care Chiropractic and Simpson**
**(Unjust Enrichment)**

269.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-182 above.

270.    As set forth above, Urgent Care Chiropractic and Simpson have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

271.    When GEICO paid the bills and charges submitted or caused to be submitted by Urgent Care Chiropractic and Simpson through Urgent Care Chiropractic, it reasonably believed that it was legally obligated to make such payments based on Urgent Care Chiropractic and Simpson's improper, unlawful, and/or unjust acts.

**THIRTEENTH CAUSE OF ACTION**
**Against Wellness Works**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

272.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

273.     There is an actual case in controversy between GEICO and Wellness Works regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

274.     Wellness Works has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of Florida law.

275.     Wellness Works has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

276.      Wellness Works has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

277.     Wellness Works has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

278.     Wellness Works has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

279.     Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Wellness Works has no right to receive payment for any pending bills submitted to GEICO.

## FOURTEENTH CAUSE OF ACTION
### Against Rizvi and Simpson
### (Violation of RICO, 18 U.S.C. § 1962(c))

280.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

281.    Wellness Works is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

282.    Rizvi and Simpson knowingly have conducted and/or participated, directly or indirectly, in the conduct of Wellness Works's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Wellness Works was not eligible to receive under the No-Fault Law because: (i) Wellness Works unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance;  and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

283.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3".

69

284.     Wellness Works's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Rizvi and Simpson operated Wellness Works, inasmuch as Wellness Works was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Wellness Works to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Wellness Works to the present day.

285.     Wellness Works is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Wellness Works in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

286.     GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $55,000.00 pursuant to the fraudulent bills submitted through Wellness Works.

287.     By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964, and any other relief the Court deems just and proper.

**FIFTEENTH  CAUSE OF ACTION**
**Against Simpson, Simpson Chiropractic, Urgent Care Chiropractic, and Rizvi**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

288.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

289.     Wellness Works is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

290.     Simpson, Simpson Chiropractic, Urgent Care Chiropractic, and Rizvi are employed by or associated with the Wellness Works enterprise.

291.     Simpson, Simpson Chiropractic, Urgent Care Chiropractic, and Rizvi knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Wellness Works's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Wellness Works was not eligible to receive under the No-Fault Law because: (i) Wellness Works unlawfully was operated in violation of Florida law; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance;  and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

292.     A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3". Each such mailing was made in furtherance of the mail fraud scheme.

293.     Simpson, Simpson Chiropractic, Urgent Care Chiropractic, and Rizvi knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

294.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $55,000.00 pursuant to the fraudulent bills submitted through the Wellness Works enterprise.

295.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**SIXTEENTH CAUSE OF ACTION**
**Against Wellness Works, Rizvi, and Simpson**
**(Under Fla. Stat. 501.201 et. seq.)**

296.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-182 above.

297.    Wellness Works, Rizvi, and Simpson are actively engaged in trade and commerce in the State of Florida.

298.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

299.    Wellness Works, Rizvi, and Simpson engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

300.    The bills and supporting documents submitted by Wellness Works, Rizvi, and Simpson  to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Wellness Works's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

301.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Wellness Works, Rizvi, and Simpson has been materially injurious to GEICO and its Insureds.

302.     The conduct of Wellness Works, Rizvi, and Simpson was the actual and proximate cause of the damages sustained by GEICO.

303.     Wellness Works, Rizvi, and Simpson's unfair and deceptive acts have caused GEICO to sustain damages of at least $55,000.00.

304.     By reason of Wellness Works, Rizvi, and Simpson's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**SEVENTEENTH CAUSE OF ACTION**
**Against Wellness Works, Rizvi, and Simpson**
**(Common Law Fraud)**

305.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-182 above.

306.     Wellness Works, Rizvi, and Simpson intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Wellness Works for the Fraudulent Services.

307.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Wellness Works was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact Wellness Works never was in compliance with Florida Law, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that

the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

308.     Wellness Works, Rizvi, and Simpson intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Wellness Works that were not reimbursable.

309.     GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $55,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by Wellness Works, Rizvi, and Simpson through Wellness Works.

310.     Wellness Works, Rizvi, and Simpson's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

311.     Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### EIGHTEENTH CAUSE OF ACTION
**Against Wellness Works, Rizvi, and Simpson**
**(Unjust Enrichment)**

312.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-182 above.

313.     As set forth above, Wellness Works, Rizvi, and Simpson have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

314.     When GEICO paid the bills and charges submitted or caused to be submitted by Wellness Works, Rizvi, and Simpson through Wellness Works, it reasonably believed that it was legally obligated to make such payments based on Wellness Works, Rizvi, and Simpson's improper, unlawful, and/or unjust acts.

## JURY DEMAND

315.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.     On the First Cause of Action against Simpson Chiropractic, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Simpson Chiropractic has no right to receive payment for any pending bills submitted to GEICO;

B.     On the Second Cause of Action against Simpson, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $615,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.     On the Third Cause of Action against Simpson, Wellness Works, and Rizvi, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $615,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.     On the Fourth Cause of Action against Simpson Chiropractic and Simpson, compensatory damages in an amount to be determined at trial but in excess of $615,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

E.     On the Fifth Cause of Action against Simpson Chiropractic and Simpson, compensatory damages in an amount to be determined at trial but in excess of $615,000.00,

75

together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

F.      On the Sixth Cause of Action against Simpson Chiropractic and Simpson, more than $615,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

G.      On the Seventh Cause of Action against Urgent Care Chiropractic, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Urgent Care Chiropractic has no right to receive payment for any pending bills submitted to GEICO;

H.      On the Eighth Cause of Action against Simpson, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $420,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

I.      On the Ninth Cause of Action against Simpson, Wellness Works, and Rizvi, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $420,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

J.      On the Tenth Cause of Action against Urgent Care Chiropractic and Simpson, compensatory damages in an amount to be determined at trial but in excess of $420,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

K.      On the Eleventh Cause of Action against Urgent Care Chiropractic and Simpson, compensatory damages in an amount to be determined at trial but in excess of 420,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

L.     On the Twelfth Cause of Action against Urgent Care Chiropractic and Simpson, more than $420,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

M.     On the Thirteenth Cause of Action against Wellness Works, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Simpson Chiropractic has no right to receive payment for any pending bills submitted to GEICO;

N.     On the Fourteenth Cause of Action against Simpson and Rizvi, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $55,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

O.     On the Fifteenth Cause of Action against Simpson, Simpson Chiropractic, Urgent Care Chiropractic, and Rizvi, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $55,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

P.     On the Sixteenth Cause of Action against Wellness Works, Rizvi, and Simpson, compensatory damages in an amount to be determined at trial but in excess of $55,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

Q.     On the Seventeenth Cause of Action against Wellness Works, Rizvi, and Simpson, compensatory damages in an amount to be determined at trial but in excess of 55,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper; and

R.     On the Eighteenth Cause of Action against Wellness Works, Rizvi, and Simpson, more than $55,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Dated:        May 22, 2025

*/s/ Kristen L. Wenger*
Max Gershenoff (FBN 1038855)
John P. Marino (FBN 814539)
Kristen Wenger (FBN 92136)
Lindsey R. Trowell (FBN 678783)
Christina Bezas (FBN 1038951)
RIVKIN RADLER, LLP
Riverplace Tower
1301 Riverplace Blvd. Suite 1000
Jacksonville, FL 32207
Phone: (904) 791-8948
Facsimile: (904) 598-6225
Max.Gershenoff@rivkin.com
John.Marino@rivkin.com
Kristen.Wenger@rivkin.com
Lindsey.Trowell@rivkin.com
Christina.Bezas@rivkin.com

-and-

926 RXR Plaza
West Tower
Uniondale, NY 11556
Phone: (516) 357-3000
Facsimile: (516) 357-3333
*Attorneys for Plaintiffs*
